UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NORMAN DARBY,

             Defendant.

13 Cr. 890 (LAP)

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA
CONCERNING NORMAN DARBY**

PREET BHARARA
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Gina Castellano
Assistant United States Attorney
    *Of Counsel*

The Government respectfully submits this memorandum in advance of the sentencing of Norman Darby (the "defendant"), which is scheduled for June 18, 2015 at 2:00 p.m., and in response to the defendant's sentencing submission dated June 5, 2015.  As discussed more fully below, the defendant placed advertisements offering Victim-1 – who was 15 and 16 years old at the time – for commercial sex on backpage.com, a classifieds webpage commonly used by sex traffickers acting as pimps.  When men responded to the advertisements, the defendant and his co-conspirator directed Victim-1 to engage in commercial sex acts, and the defendant and his-conspirators drove Victim-1 to hotels to engage in the sex acts.  As a result of this deplorable conduct, the defendant pleaded guilty in this case to conspiracy to commit sex trafficking of a minor victim from in or about September 2010 through in or about June 2012, in violation of Title 18, United States Code, Section 1594(c).[1]  The Sentencing Guidelines range stipulated to in the defendant's plea agreement with the Government is 135 to 168 months' imprisonment (the "Stipulated Guidelines Range").[2]  The Government also submits that the defendant should be ordered to pay $36,000 in mandatory restitution.

For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 135 to 168 months' imprisonment should be imposed.

---

[1] Victim-1, the victim of the sex trafficking conspiracy offense charged in Count One of the Indictment, was over 14 and less than 18 years old at the time of the offense.  Accordingly, the defendant was charged with conspiracy to violate Title 18, United States Code, Sections 1591(a) and (b)(2).

[2] The Presentence Investigation Report ("PSR") calculates a Guidelines range of 151 to 188 months' imprisonment (PSR § 84.).  As detailed more fully below, although the Government agrees with the Guidelines calculation set out in the PSR, the Government's position is that, as reflected in the plea agreement, a sentence within the Stipulated Guidelines Range would be sufficient, but not greater than necessary, to meet the legitimate purposes of sentencing.

In light of the very serious nature and circumstances of the offense, which irreparably traumatized Victim-1, and the need for the sentence imposed to promote respect for the law, deter this conduct by others, provide just punishment for the offense, and protect the public from the defendant, such a sentence would be sufficient, but not greater than necessary.

## I.   The Relevant Offense Conduct

Victim-1 first met the defendant in the fall of 2010, when Victim-1 was just 15 years old. (PSR ¶ 13.)  The defendant was introduced to Victim-1 by Elfego Boyd,[3] his co-defendant in this case. (*Id.*)  Boyd had met Victim-1 in September 2010. (*Id.*) Boyd asked Victim-1 to prostitute for him and she agreed. (*Id.*)  The defendant and Boyd placed advertisements on backpage.com, offering Victim-1 for sex. (*Id.*)  Backpage.com is commonly used for the advertisement of commercial sex by sex traffickers working as pimps. (*Id.*)  The advertisements did not receive any responses and Victim-1 left New York. (*Id.*)

In the spring of 2011, Victim-1 returned to New York and again encountered Boyd. (*Id.* ¶ 14.)  Boyd and Victim-1 temporarily lived at Boyd's apartment in the Bronx, New York. (*Id.*) Although Boyd told Victim-1 that they were boyfriend and girlfriend, Boyd posted advertisements on backpage.com offering Victim-1 for sex in exchange for money. (*Id.*)   At Boyd's direction, Victim-1 engaged in sex acts with multiple men who responded to the backpage.com advertisements. (*Id.*)  Victim-1 did not keep any of the proceeds from the sex acts – she gave all of the proceeds to Boyd. (*Id.*)

---

[3] Boyd pleaded guilty to sex trafficking of minors, in violation of Title 18, United States Code, Section 1591(a) and (b)(2).  He was sentenced before the Honorable Robert P. Patterson to 120 months' imprisonment on January 8, 2015.

Some time thereafter, Boyd took Victim-1 to a house in Long Island (the "Long Island House"), where she stayed with Boyd, the defendant, and another co-conspirator ("CC-1") for several months. (*Id.* ¶ 15.) [4]   During that time, the defendant and Victim-1 posted advertisements on backpage.com offering Victim-1 for sex in exchange for money. (*Id.*)   When men responded to the advertisements, the defendant, Darby, and CC-1 drove Victim-1 to hotels in the vicinity of the Long Island House to engage in sex acts with the men. (*Id.* ¶ 16.)   Victim-1 always gave all of the money paid to her to Boyd. (*Id.*)   Victim-1 understood that the defendant was Boyd's manager, and watched Boyd hand the money to the defendant. (*Id.*)

After several months at the Long Island House, Victim-1 returned to New York City with Boyd. (*Id.* ¶ 17.)   At Boyd's direction, Victim-1 continued to engage in commercial sex with men responding to the backpage.com advertisements and continued to give all of the earnings to Boyd. (*Id.*)

In November 2011, Victim-1 ran away from Boyd, but the defendant and Boyd were not deterred. (*Id.*)   The defendant and Boyd contacted Victim-1 on facebook.com and solicited her to return to work as a prostitute. (*Id.* ¶¶ 18-19.)    In discussing the prior commercial sex engaged in by Victim-1 at the direction of the defendant and Boyd, the defendant noted on facebook.com that Boyd knew "I was the brains of this." (*Id.* ¶ 18.)

In 2013, the defendant again communicated with Victim-1 through facebook.com and discussed Victim-1 returning to New York to work as a prostitute for him and Victim-1 bringing

---

[4] The Long Island House was the defendant's residence from 2012 until his arrest in this case. (PSR § 57.)

a 16-year old girl with her who would also work as a prostitute.[5]   On October 16, 2013, the

defendant was arrested while going to meet Victim-1.

## II.   The Appropriate Sentence

### A.   Guidelines Calculation

The PSR calculated a total offense level of 33 and a criminal history category of II. (*Id.* ¶

83.)   Accordingly, the Guidelines range calculated in the PSR is 151 to 188 months'

imprisonment.   (*Id.*)   In the defendant's plea agreement with the Government, the parties

stipulated to a total offense level of 33 and a criminal history category of I. (Plea Agreement,

June 13, 2014, at 3.)   The defendant contends that a criminal history category of II, as calculated

in the PSR, results in an overstatement of the defendant's criminal history.   (Def. Sentencing

Mem. at 18 and n. 7.)   The defendant was convicted of Criminal Possession of a Controlled

Substance in the Fifth Degree and sentenced to five years' probation on July 15, 2003. (PSR ¶

44.)   On December 20, 2006, the defendant was resentenced to 4 months' imprisonment. (*Id.*)

The Government agrees with probation that the defendant's sentence to four months'

imprisonment should be counted in calculating the defendant's criminal history

category.   Probation's conclusion that the defendant has two criminal history points, and

therefore is in Criminal History Category II is correct.   The resulting Guidelines range is 151 to

188 months' imprisonment.   However, the Government's position is that a sentence within the

Stipulated Guidelines Range of 135 to 168 months' imprisonment, as agreed to in the

---

[5] At the time, the facebook.com account of Victim-1 was controlled by law enforcement

agents.

defendant's plea agreement with the Government, would be sufficient, but not greater than necessary, to meet the legitimate purposes of sentencing.

### B. The Serious Nature of the Defendant's Sex Trafficking Offense Warrants a Sentence within the Stipulated Guidelines Range

The nature and circumstances of the offense are extremely serious. The defendant engaged in a conspiracy to sex traffic a 15-year-old girl – Victim 1. The defendant used internet advertisements to solicit men to pay for sex with Victim-1, and drove her to various hotels to engage in the sex acts with these men. The defendant preyed on a vulnerable member of our society. His depraved behavior requires substantial punishment.

The submission filed on behalf of the defendant does not present any arguments or facts that justify a below-Guidelines sentence. The defendant contends that he should receive a below-Guidelines sentence because he "played a lower level role in the [sex-trafficking] conspiracy than his co-defendant." (Def. Sentencing Mem. at 11.) The Government does not dispute that the defendant's co-conspirator, Elfego Boyd, met Victim-1, asked her to prostitute for him, introduced her to the defendant, and directed her to engage in commercial sex before and after the time spent at the Long Island House where both Boyd and the defendant directed Victim-1 to engage in commercial sex. The Government also does not dispute that although Boyd pled guilty to sex-trafficking Victim-1, he had two additional minor victims as to whom, in his plea agreement with the Government, he agreed to make full restitution.[6] As a result, at Boyd's sentencing, the Government's position was that Boyd's conduct required substantial punishment and that a sentence within the Guidelines range of 135 to 168 month's imprisonment

---

[6] At Boyd's sentencing, the Government sought restitution only as to Victim-1.

was appropriate.   Despite the Government's request, Judge Patterson imposed a below-Guidelines sentence of the mandatory minimum of 120 months' imprisonment on Boyd.

Although the defendant's role in the conspiracy did not rise to the level of Boyd's, the defendant's reprehensible conduct should not be understated.  Victim-1 lived at the Long Island House, the defendant's residence, for several months.  The defendant and Victim-1 posted advertisements on backpage.com offering Victim-1 for sex using a computer provided by the defendant. The defendant and his co-conspirators drove Victim-1 to various hotels in Long Island to engage in the sex acts.  Victim-1 gave all of the commercial sex money to Boyd, and witnessed Boyd hand the money to the defendant.  In discussing the prior commercial sex engaged in by Victim-1, the defendant noted on facebook.com that Boyd knew "I was the brains of this."  Regardless of issues relating to relative culpability, Darby's conduct was extremely serious and is deserving of substantial punishment.  The Government believed, in reaching its plea agreement with Boyd and Darby, that a Guidelines range of 135 to 168 months' imprisonment was sufficient but not greater than necessary as to each defendant, given the extremely serious conduct at issue.  The Government continues to hold to that view.

The defendant also contends that the defendant's "troubled upbringing and his exposure to domestic violence as child" counsels in favor of a below-Guidelines sentence.   (Def. Sentencing Mem. at 17.)  The defendant highlights that he was an alcoholic from an extremely young age and witnessed his father physically abuse his mother, but, as detailed in the PSR, he disclaims any incidents of abuse throughout his childhood and enjoyed a loving relationship with his mother until her death in 2012, when the defendant was approximately 32 years old. (PSR §§ 52, 54.)  The defendant also repeatedly mentions that he is married, has a young daughter, and

6

has made great strides while incarcerated.  The defendant contends that, as a result, his risk of recidivism is low.   But, the defendant had a family and a daughter at the time he engaged in a conspiracy to sex traffic a 15-year old girl.  The Government shares probation's sentiment that the defendant's conduct is incomprehensible given that he has a daughter.  And, although noteworthy, the defendant's accomplishments while incarcerated do not lessen the seriousness of his crime or its harmful impact on his victim.

### C.  Restitution and Forfeiture

The Government requests that the Court order the defendant to pay $36,000 in mandatory restitution.  The minor victim of the defendant's sex trafficking crime is entitled to be "made whole for their losses." *See United States* v. *Cortes-Castro*, 511 Fed. App'x 942, 947 (11th Cir. 2013). Indeed, Congress unequivocally mandated restitution in cases of peonage, slavery, and trafficking for the "full amount of the victim's losses" when it passed the Trafficking Victims Protection Reauthorization Act, codified (in relevant part) at Title 18, United States Code, Section 1593(b)(1).

The "full amount of the victim's losses" is defined as the sum of two components: (1) ill-gotten gains, plus (2) the full amount of the victim's losses, defined as, among other things, lost income. *See In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012); *see also* 18 U.S.C. § 2259(b)(3) (incorporated by reference in 18 U.S.C. § 1593(b)(3)).  Furthermore, Title 18, United States Code, Section 1593(b)(3) expressly provides that the amount of restitution must include "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." *See United States* v. *Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008).  "[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, i.e., persons who engaged in

commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct." *Id.*

The amount of restitution need not be proven with exactitude; rather the district court's duty is to estimate the amount, based upon facts in the record. *See In re Sealed Case*, 702 F.3d at 66.

## CONCLUSION

For the reasons set forth above, the Government respectfully urges the Court to impose a substantial sentence within the Stipulated Guidelines Range of 135 to 168 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purpose of sentencing, and order mandatory restitution.

Dated: New York, New York
   June 12, 2014

         Respectfully submitted,

         PREET BHARARA
         United States Attorney for the
         Southern District of New York

By:  _____
         Gina Castellano
         Assistant United States Attorney
         (212) 637-2224

cc:  John Kaley, Esq. (via ECF)